## Case No. 281.

### The AMERICA.

### [3 Ben. 424.][1]

District Court, S. D. New York. Oct., 1869.[2]

COLLISION IN EAST RIVER — VESSELS CROSSING— PORTING HELM—WHISTLES.

1. A steam vessel has no right to select for herself a particular course, and, by the use of her whistle, prescribe to another steam vessel a particular course, without regard to the act for preventing collisions.

[Cited in The Free State, Case No. 5,090.]

2. Article 13 of that act only applies when each vessel, by day, sees the masts or the line of the keel of the other in a line, or nearly in a line, with her own masts or the line of her own keel, and when, by night, each vessel is in such a position as to see both of the side-lights of the other.

[Cited in The Manitoba, Case No. 9,029.]

3. The steamboat F. was going down the East river, with the ebb tide, and the ferry-

---

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2][Reversed by circuit court, in the America, Case No. 284, and that decree was subsequently reversed by the supreme court in 92 U. S. 432.]

boat A. was crossing from New York to Brooklyn, and heading up against the tide, so as to swing into her slip, in such a position that, if both vessels had kept on, the F. would have passed ahead of the A., and between her and the Brooklyn shore. The F. blew one whistle, and ported, whereupon the pilot of the A., seeing that, if both vessels kept on, the A. would be struck on her starboard side, also ported, and the two vessels came together nearly head on: Held, that the F. was in fault, in porting, and attempting to cross the course of the A., and that the A. was not in fault.

[Cited in The Free State, Case No. 5,090.]
[See note to The America, Case No. 284.]

[In admiralty. Libel by the Camden & Amboy Railroad Transportation Company, owners of the steam tug Fairfield, against the steam ferry boat America, owned by the Union Ferry Company. Libel dismissed. This decree was reversed by the circuit court in The America, Case No. 284. The decree of the circuit court was reversed by the supreme court. 92 U. S. 432. See note to The America, Case No. 284. For the decree of the circuit court on the question of damages, see The America, Case No. 285.]

Beebe, Donohue & Cooke, for libellants.
B. D. Silliman, for claimants.

BLATCHFORD, District Judge. This is a libel, filed by the owners of the steamboat Fairfield, against the steam ferry-boat America, to recover for the damages caused to the Fairfield by a collision, which took place between her and the America, on the 13th of December, 1867, [1868,] at about five o'clock in the afternoon, in the East river, between New York and Brooklyn, a short distance below the Brooklyn slip of the Fulton ferry. The Fairfield was going down the East river, having come from the Navy Yard at Brooklyn, and being bound into the North river, around the Battery. The America was a boat running on the Fulton ferry, from the slip at the foot of Fulton street, New York, to the slip at the foot of Fulton street, Brooklyn, and was at the time on a trip from New York to Brooklyn. The tide was strong ebb. The case made by the libel is, that the Fairfield was going down, at about the middle of the river, when the America left her slip on the New York side; that, as the vessels neared each other, a single whistle was blown by the Fairfield, to indicate her intention to go to the right, and the wheel of the Fairfield was put to port, and her head sheered angling towards the New York shore; that the America paid no attention to the whistle of the Fairfield, but continued to haul more up the river, and on to the Fairfield; that, as it was found that the America was rapidly hauling on to the Fairfield, and still continuing to head more and more up the river, and that a collision, if the America kept on, would probably happen, the bells of the Fairfield were rung to slow, stop, and back; that these orders were promptly obeyed, and the headway of the Fairfield was nearly, if not quite, stopped

in the water; that, while the Fairfield was in that condition, the America blew two whistles, indicating her intention to go to the left; that, at that time, the America was so close to the Fairfield, that the Fairfield, her engine and way being stopped, could do nothing except continue to back her engine; that the America kept on, at nearly, if not quite, full spéed, and struck the stem of the Fairfield, a little on the larboard side, crushing in her planks and timbers, and opening her forward; and that the Fairfield commenced to take in water rapidly, and was backed into a slip below the Brooklyn terminus of the Fulton ferry, and there sank in a few moments. The libel alleges, that the collision happened through the carelessness, negligence, and want of skill and management of those navigating the America, and, among other things, in not having good and sufficient lookouts, in not promptly answering the single whistle of the Fairfield, in hauling up the river in such a manner as to bring her upon the Fairfield, in not keeping to the right, in blowing two whistles, and attempting to go to the left of the Fairfield, when the Fairfield was lying dead in the water, and when she was so near to the Fairfield that a collision could not be avoided, in passing outside of the Fairfield, and then steering up the river and towards the Fairfield, and in not slowing, stopping, and backing before the collision was inevitable. The libel also avers, that the management and navigation of the Fairfield were correct and proper, as it was her duty to keep to the right, and to indicate her intention by a single whistle, and, when she found that the America disregarded her signals, and continued to sheer on to her, to slow, stop, and back. The answer alleges, that, when the America was within about 200 yards of the Brooklyn shore, and about 250 or 300 yards of her slip on the Brooklyn side of the river, and was heading up the East river, against a strong ebb tide, for the purpose of getting room to swing into said slip, her pilot discovered the Fairfield, under full headway, heading down the river, and towards the Brooklyn shore, on a course which, if continued, would have carried her in front of and past the America, on the side towards the Brooklyn shore; that thereupon the America kept steadily on her course up the river, in order that the Fairfield might keep her course, and pass in front of the America, as she could easily have done, without any collision; but the Fairfield, after continuing said course until within a short distance of the America, and when the Fairfield was under full headway, and when it was impossible for the boats to so change their course as to pass each other on the right without colliding with each other, blew one whistle, indicating her intention to pass on the right, and outside of the America, and simultaneously put her helm hard to port, and in that way steered directly towards the

America; that, as soon as the Fairfield so sheered and blew her whistle, it was obvious that she would strike the America on the starboard side, unless the America could be so sheered as to receive the blow upon her bow, or as to admit of the Fairfield's passing on the opposite side of the America, or of striking her a quartering instead of a full blow on her side; that the only course which the pilot of the America could thereupon properly adopt, to prevent the America from being struck on her starboard side, and being cut through, was to give one whistle as a signal, so that the Fairfield might put her helm as hard a-port as possible, and to put the helm of the America hard a-port at the same time; that all this was immediately done by the pilot of the America, and she was immediately stopped, and her engines were backed, and she had stopped her headway by the land, when the Fairfield, continuing her course directly towards the America, struck her, the two vessels colliding head and head; and that the collision was caused wholly by the carelessness, negligence, and want of skill and management of the persons navigating the Fairfield, and, among other things, in not having a good and sufficient lookout, or a competent pilot, in blowing one whistle, and putting her helm to port, and attempting to pass the America on the right, when she had sufficient room to pass the America on the left, and when her course, if continued, would have taken her past the America on the left, and when it was plain that an attempt to pass on the right would probably bring about a collision, and in not slowing, stopping and backing before the collision became inevitable, or so as to lessen the force of the same.

In looking into the libel, the first thing that arrests attention is the fact, that it does not state how the two vessels bore from each other, or how they were approaching each other, when the Fairfield blew a single whistle, and put her helm to port. It only states, that, as the vessels neared each other, the whistle was blown by the Fairfield, and her helm was put to port, and her head was sheered angling towards the New York shore. This averment is entirely consistent with the statement in the answer, that the blowing of the whistle by the Fairfield, and the putting of her helm to port, and the sheering that followed, took place when the Fairfield was on a course heading towards the Brooklyn shore, which, if continued, would have carried her in front of and past the America, on the side towards the Brooklyn shore, without any collision. It is not pretended in the libel, that there was any risk of collision, when the Fairfield blew her whistle and ported, or that the vessels were then meeting end on, or nearly end on, so as to involve risk of collision, nor have the libellants attempted to show by proof any such state of things. The whole case made by the libel is, that, inasmuch as the

Fairfield blew a single whistle, and ported, it was the duty of the America to do the same; that the America failed to do so; and that, therefore, the America is solely responsible for the collision. The theory of the libel is based on the too prevalent and erroneous notion, that a steam vessel has a right, by the use of her steam whistle, to select for herself a particular course, and prescribe to another steam vessel a particular course, without regard to the provisions of the act of congress of April 29, 1864, (13 Stat. 58,) for preventing collisions on the water. If there was no risk of collision the moment before the Fairfield blew her whistle and ported, it was not her duty to port, and it was not incumbent on the America to port, and the Fairfield could not, by making a signal, impose any such obligation on the America. The libel makes out no case requiring the America to port her helm, under article 13 of the said act. That article provides as follows: "If two ships under steam are meeting end on, or nearly end on, so as to involve risk of collision, the helms of both shall be put to port, so that each shall pass on the port side of the other." This rule applies only to steamers meeting, and only to steamers meeting end on, or nearly end on, and only when there is risk of collision. It does not apply when the courses of the two steamers are such that there is no risk of collision. It does not apply to two steamers which must, if both kept on their respective courses, pass clear of each other. The only cases in which it applies are when each of the two vessels is end on, or nearly end on, to the other—that is, cases in which, by day, each vessel sees the masts, or the line of the keel, of the other, in a line, or nearly in a line, with her own masts, or the line of her own keel, and cases in which, by night, each vessel is in such a position as to see both of the sidelights of the other vessel. It does not apply to cases in which, by day, a steamer sees another steamer ahead, crossing her own course; nor, by night, to cases where the red light of one steamer is opposed to the red light of the other, or where the green light of one steamer is opposed to the green light of the other, or where a red light without a green light, or a green light without a red light, is seen ahead, or where both the green and the red lights are seen anywhere but ahead. No case is made by the libel, authorizing the Fairfield to port, or requiring the America to port. Nor does the testimony on the part of the Fairfield make out a case of meeting end on, or nearly end on, at the time the Fairfield blew her single whistle and ported. On the other hand, the answer, and the testimony on the part of the claimants, make out a case where the Fairfield was on a course that would have carried her between the America and the Brooklyn shore, and the America was on a course that would have carried her to the New York side of the Fairfield, and the courses of the two vessels were such, when the Fairfield blew her single whistle and ported, that there would have been no collision, if both vessels had kept such courses. I think that the weight of the evidence is decidedly in favor of the statement contained in the answer as to the positions and courses of the two vessels at the time the Fairfield blew her single whistle and ported. If so, it follows, that the Fairfield, by porting, and attempting to cross the bows of the America, from the starboard side of the latter to her port side, left a course where there was no risk of collision, and threw herself in the way of the America, so as to make a collision inevitable. Unless the story in the answer is true, the collision could not have happened as it did, and the two vessels could not have struck each other in the way they did. For, as the Fairfield ported, and sheered towards the New York shore, the America, which was farther towards the New York shore than the Fairfield was, ported and sheered towards the Brooklyn shore, so as to avoid being struck on her starboard side by the Fairfield, and so as to receive the blow nearly on her bow, which was done. On the testimony of the pilot of the Fairfield, the collision could never have happened as it did. The Fairfield could not have been as far over towards the New York shore as is claimed for her by him. For, if she had been, inasmuch as the tide was ebb, and the America had rounded up the river, and could not have done so, on an ebb tide, until she was well over towards the Brooklyn shore, the vessels could not have come together bow on, as they did, after the Fairfield had ported. On the whole evidence, the collision took place through the fault of the Fairfield, in porting and attempting to cross the bows of the America, when she had no right to do so. I see no fault in the navigation of the America. Her pilot heard the single whistle of the Fairfield when it was blown, and noticed her porting as soon as it took place, and he immediately stopped and reversed his engine, and ported his helm, to change the direction of the coming blow.

The libel is dismissed, with costs.