THE DECATUR H. MILLER.

HITCH v. MERCHANTS' & MINERS' TRANSP. CO.

MERCHANTS' & MINERS' TRANSP. CO. v. HITCH.

(Circuit Court of Appeals, Fourth Circuit. May 22, 1894.)

No. 62.

1. COLLISION BETWEEN STEAMERS—LIGHTS—EVIDENCE.

The steam barge Susie Hitch, while on her voyage up Chesapeake bay, about 7 o'clock in the evening, was struck and sunk by the steamship

Decatur H. Miller. When sighted by the Hitch, the Miller was about five minutes away, on the starboard bow, showing her green light. The Hitch blew two blasts of her whistle, and starboarded her helm. Hearing no response, she blew two more blasts. The Miller then shut out her green, and showed her red light, blew one blast, and at once came into the Hitch. The Hitch's side lights were set at 6 o'clock; were burning brightly at half past 6. Witnesses for the Miller testified that they saw no lights on the Hitch; but her mate testified in the circuit court that he saw them burning five minutes before the collision. In his testimony in the district court, he did not fix the interval between the time he saw the lights and the collision within half an hour: but, in the protest made immediately after the accident, it was stated that he saw the lights five minutes before the collision. *Held*, that the Hitch was not in fault. Jackson, District Judge, dissenting.

2. SAME.

The steamship Decatur H. Miller, bound down Chesapeake bay about 7 o'clock in the evening in October, struck and sunk the steam barge Susie Hitch. The Miller, when sighted by the Hitch, about five minutes before the collision, was in Craighill channel, headed southeast by east, her proper course. The Hitch was off her starboard bow, in shoal water. Witnesses on the Miller testified that they saw no lights on the Hitch, and heard no blasts from her whistle. When the collision occurred, the vessels were in less than three fathoms of water, out of the channel, and the Miller was headed west, so that she would shortly have gone aground. *Held*, that the Miller was in fault.

Appeal from the Circuit Court of the United States for the District of Maryland.

John H. Thomas, for Hitch.

Wm. Pinkney Whyte, for the Decatur H. Miller.

Before GOFF and SIMONTON, Circuit Judges, and JACKSON, District Judge.

SIMONTON, Circuit Judge. These are an appeal and cross appeal from the decree of the circuit court of the United States for the district of Maryland in a cause of collision. The case was heard in the district court, and his honor, the district judge, holding both parties in fault, divided the damages. An appeal was taken to the circuit court, where further testimony was adduced, and a pro forma decree was entered, concurring in the finding of the district court, from which appeals were taken to this court.

The libelant is the owner of a steam barge called the Susie Hitch. This steam barge plies between Hamilton, N. C., and the port of Baltimore, engaged principally in transporting lumber. She is 168 feet in length over all, 22½-feet beam, with a 6-foot hold. Her pilot house, 11 feet wide, is 115 feet from her stem. The boxes for her side lights were on each side of the after part of the pilot house, the inboard screen being 4 feet, leaving 3 feet clear. On the evening of the 11th of October, 1888, the Susie Hitch was on her voyage from Hamilton to Baltimore, and was proceeding up Chesapeake bay, moving at the rate of 2½ to 3 miles an hour, with the wind dead ahead and high, the sea rough. The tide was about slack-water ebb. She was a half or three-quarters of a mile below Sandy Point light, out of and west of the channel in shoal water, when she came in collision with the Decatur H. Miller, a large passenger steamer

on the regular line between Baltimore and Norfolk, on her regular voyage to the last-named city. The Miller was going at the rate of 10 miles an' hour, her usual speed. She struck the Susie Hitch with her bow on the starboard side about 30 feet from her stem, penetrating about 8 or 9 feet, cutting through a bulk of 5,000 feet of lumber, and into a longitudinal bulkhead. The Susie Hitch was supplied with lights,—one masthead light, bow light, back aft light, all of which were white, and the side lights green and red. She had made frequent voyages up and down Chesapeake bay, and navigators on other vessels in that bay had frequently observed her lights without difficulty. The side lights were six by eight globes, which had been inspected and passed by the local inspectors, and which are still in use. The duty of trimming and caring for them devolved upon one man of the crew, and he took them down, trimmed them, and put them up every day. On the day of the collision, he trimmed these lights, and cleaned the glasses, between 1 and 2 o'clock. Aided by another of the crew, who testifies also, he put them up about 6 o'clock, lighted them, and saw that they were then burning brightly and were in good order, and so left them. The master saw them a half hour afterwards, and they were burning brightly and seemed in good order. The mate of the Susie Hitch, a licensed pilot of the Chesapeake bay, saw the lights within five minutes before the collision, and they were in good order. This man had been examined before the district judge, but he did not fix the interval between his observation of the lights and the collision within a half hour. This was one of the grounds on which the district judge held the Hitch in fault. The witness was recalled before the circuit court, and then he fixed the interval within five minutes. Ordinarily, this testimony, introduced under these circumstances, would be open to grave suspicion, and would be disregarded. But the protest of the master and crew made upon arrival in Baltimore immediately after the collision makes the statement that the mate saw the lights within five minutes before the collision and found them bright and burning. This shows that the testimony before the circuit court was not an afterthought. All the witnesses on the Miller—the mate, quartermaster, and lookout—swear that just previous to the collision these lights on the Hitch were not in fact burning; that they never saw any red or green lights on her at all. This may be so. It is possible that the lights, or at least the green light, may have gone out after the mate had examined it. It was on the weather side of the barge, and the night was rainy. But we are examining into the negligence of those on the barge, and ascertaining if they were in fault. If they had seen to it that the lights were bright, burning, and in order when put up at 6 o'clock, were in good order likewise at half past 6, and were in like good order at a few minutes after 7, within 5 minutes of the collision, surely it would be holding them to too strict an accountability if we say that they were in fault for not knowing that they were not burning within those few minutes. We are of the opinion that the testimony introduced before the circuit court removed the difficulty experienced by the district judge as to the lights, and that these lights either were burning at

the time of the collision, or had gone out just before the collision, without fault on the part of the Susie Hitch. When the Miller was first seen by the Susie Hitch, the latter was a little below Sandy Point. The Miller was showing her green light and masthead light, and was off the starboard bow of the Hitch. She was apparently coming out of the Craighill channel, and was about three-quarters of a mile off, less than five minutes away. At that point the Hitch blew two blasts of her whistle. As the Miller was to the windward in a strong wind, these were not heard on her. The Hitch then starboarded her wheel. Hearing no response, she blew two more blasts, to which no reply was made. Up to this time the Miller showed only her green light. Suddenly she shut out her green light, showed her red light, blew one blast of her whistle, and immediately came into the Susie Hitch. Now, when the Susie Hitch saw the green light of the Miller off her starboard bow, and her helmsman had, as we have seen, every reason to believe that the barge was showing to the steamship her green light, she naturally supposed that the two vessels could pass without collision. Starboarding her wheel threw the bow of the Hitch more to port, and so obviated any liability to error or confusion. See order in council adopted 30th July, 1868, commented on by Judge Brown in The Manitoba, 2 Flip. 241, Fed. Cas. No. 9,029; followed in New York in The Sylvester Hale, 6 Ben. 523, Fed. Cas. No. 13,712, and The America, 3 Ben. 424, Fed. Cas. No. 281; and finally adopted by congress 19th August, 1890 (26 Stat. 322).

As the persons on the Miller in control of her navigation say that they did not hear the two blasts of the Hitch or see her colored lights, they were not mislead by her maneuvers. We cannot concur in the conclusion reached by the district judge, affirmed pro forma by the circuit court; and, under the special circumstances of this case, we hold that the Susie Hitch was without fault. We concur in the decree of the circuit court confirming the finding of the district court that the Decatur H. Miller was in fault. She drew 16 feet aft and 14 feet forward, and was in the channel. The Susie Hitch drew 6 feet, and was in shoal water. The Miller went towards and came into collision with her at a point over a half mile from the channel, in water 2½ fathoms in depth. The true course of the Miller, and the course she was on just before the collision, was down the channel southeast by east. When she struck the Susie Hitch, her course was nearly due west, heading on to the western shore, "which she would have struck had she gone where she was going." These facts, with those stated by the district judge, show that the Decatur H. Miller was in fault.

It is ordered that so much of the circuit decree holding the libelant responsible for half the damages and costs be reversed; that the case be remanded to the circuit court, with instructions to enter a decree against the stipulators of the Decatur H. Miller in the full amount of the damages and costs found in the circuit decree.

JACKSON, District Judge (dissenting). I cannot agree with the conclusions of the court in this case. The evidence before the

district court satisfied his honor, the judge, that it was a case of mutual fault. I deem it unnecessary to enter upon a full discussion of the evidence, as the case turns upon the fact whether the steamer Susie Hitch had her side lights burning previous to the disaster, and, if so, how long before the collision occurred. On the hearing before the district court there was no evidence that showed that the lights were burning at the time of, or shortly before the collision. After the decision of the district judge, the mate of the Hitch was recalled, and testified before the circuit court that he saw the lights burning about five minutes before the collision. I place but little reliance upon the statement made by this witness, as he knew at that time that it was one of the reasons assigned by the district judge for holding the Hitch in fault. There is but little, if in fact any, difference in the weight of evidence on this point. Some consideration is given to the fact that the protest stated that the lights of the Hitch were burning at the time of the collision. I think that fact is of little consequence, as we find from experience that all protests, when it is deemed essential, contain that most important fact. If the lights were burning so that the Miller could see them, and still she steamed directly on until the collision occurred, she would be guilty, not only of gross, but of criminal, negligence. She could not have seen the lights. It is impossible to believe that the officers in charge of a large steamer of her size would run a boat down under the circumstances claimed by the libelant in this case. There was no apparent motive for such conduct, and, before we should judge the Miller to be wholly in fault, we must find, not only that there was no negligence upon the part of the Hitch, but that the officers of the Miller, seeing all the lights burning on the Hitch, heedlessly and needlessly produced the collision. This conclusion can only be reached after we are satisfied that there was no motive for self-preservation, or that there existed some malice on the part of the officers of the Miller against the officers or owners of the Hitch. The law of self-preservation always exists, and there is no evidence of malice.

It is claimed by the Hitch that the Miller was out of the usual track for steam vessels of her size. This fact may be conceded, but it is not of itself a fault, and does not amount to even contributory negligence. I know of no law that restricts her in her right to pursue any route up and down the bay that she thinks will best promote her interest. There is really but one solution to this case, and that is to hold both responsible. I cannot believe the lights were burning. It is simply the old case of each crew standing by their boat, with no controlling circumstance to determine who is right or wrong. It is a rule of the courts of admiralty, in collision cases, founded not only on their experience, but upon justice, that, when the evidence is so conflicting as to render it uncertain as to who was at fault, to divide the loss between the parties. For the reasons assigned, I am of opinion to affirm the decree of the district court.